**Michael GRELSON, Respondent,**

v.

**OLYMPIC WALL SYSTEMS, INC., and USF&G Insurance Company, Bec Bros., Inc., and Continental Western Insurance Company, Olympic Wall Systems and AID Insurance Company, Relators,**

**and**

**State Treasurer, Custodian of the Special Compensation Fund, Respondent.**

No. C3–84–1961.

Supreme Court of Minnesota.

May 10, 1985.

---

James Waldhaouser, Minneapolis, for Bec Bros., Inc. and Continental Western Ins. Co.

Steve Mattani, Minneapolis, for Olympic Wall and AID Inc.

W.M. Lasley, Minneapolis, for Olympic & USF&G Ins.

Hubert H. Humphrey, III, Atty. Gen., Peter F. Nelson, Asst. Atty. Gen., St. Paul, for State Treasurer.

Dale F. Mossey, St. Cloud, for Grelson.

YETKA, Justice.

The worker in this case injured his right arm on four separate occasions. After the fourth injury, his employer and his employer's workers' compensation carrier sought to have him registered retroactively with the special fund as a disabled worker. The special fund refused to register the employee retroactively, although he was registered for any future injury. The compensation judge found that the employee had a

20% permanent partial disability and, thus, should have been registered. The Workers' Compensation Court of Appeals remanded for a determination of whether the disability pre-existed the last injury. On remand, the compensation judge apportioned the disability between the four injuries: 4% to the first, 5% to the second, 5% to the third, 6% to the fourth. The employee's disability after the third injury was 14%, not enough to allow registration under the statute then in existence. Nonetheless, the compensation judge allowed registration on the basis of a medical report listing the employee's permanent partial disability as 25%. The Workers' Compensation Court of Appeals reversed. The employer and his insurer appealed by a writ of certiorari. We affirm.

Michael Grelson, now 34 years old, has worked for a number of years as a sheetrock hanger and taper. The job requires a good deal of lifting the heavy and bulky slabs of sheetrock and the use of heavy hand-held tools. Over the last several years, Grelson had injured his arm on four separate occasions. Each time, his pain had increased and his recovery slowed. Although he is back at work, Grelson is restricted as to what he can do. He lives with constant pain and cannot lift anything with his right arm.

After the third injury, Grelson saw a neurosurgeon named Dr. Leonard A. Titrud. Dr. Titrud rated Grelson's permanent partial disability at 25% on January 27, 1981. No testimony or deposition was taken of Dr. Titrud. He did, however, write a letter which, though apparently not relied upon at trial by employer and his insurer, nonetheless, appears in the record and was relied upon by the compensation judge. Another physician, Dr. David R. Johnson, rated the disability at 15% on September 23, 1981. Both reports were attached to the application for retroactive registration.

After the fourth injury, on March 20, 1981, Dr. Gordon M. Aamoth saw Grelson and rated his disability at 20%, though he later revised his rating to between 15% and 20%. On January 18, 1982, Dr. C. Kent Olson performed ulnar nerve surgery which apparently made little change in Grelson's condition. Dr. David W. Boxall examined Grelson on February 26, 1982, and rated the injury at 15% permanent partial disability.

The compensation judge determined that Grelson's disability was 20%, but did not state how much of that 20% disability existed prior to the last injury and how much was the result of the injury. The Workers' Compensation Court of Appeals remanded for a determination of the employee's disability prior to the last accident. Although, on remand, the compensation judge found only a 14% impairment prior to the last injury, he required retroactive registration on the basis of Dr. Titrud's report of a 25% impairment. Noting the inconsistency in the findings, the court of appeals affirmed the specific finding of a 14% prior disability and found that retroactive registration would not obtain since the 14% disability would be equivalent to only 37.8 weeks of compensation, well short of the 50 weeks required for registration.

■ The issue presented in this case is whether retroactive registration was required on the basis of Dr. Titrud's 25% disability report despite later medical reports indicating a much lower percentage of disability.

The Minnesota Workers' Compensation Special Fund was established to provide employers with an incentive to hire disabled workers. Ehlmann, *Minnesota's Special Compensation Fund*, 6 Wm. Mitchell L.Rev. 709 (1980). Since workers' compensation benefits are paid regardless of fault, employers were unlikely to hire a worker with a previous injury or a disability since that worker stood a greater risk than other workers of injuring himself. The legislature responded by establishing the special fund which limits the risk to employers hiring disabled workers. Act of May 6, 1965, ch. 327, § 1, 1965 Minn.Laws 463, 463–65. The statute in effect at the time of the present case provided reimbursement for "all compensation paid in

excess of 52 weeks of monetary benefits and $2,000 in medical expenses," Minn.Stat. § 176.131, subd. 1 (1980), if statutory requirements are met.

■ Grelson is registered for any future injuries. The employers and insurers argue that Grelson should be retroactively registered to cover the last injury, which occurred in 1981. The party seeking to establish the prior injury, the employer and his insurer in this case, has the burden of so proving. *See Osterkamp v. Craftsman Press*, 312 Minn. 599, 253 N.W.2d 147 (1977) (burden of establishing that disability is substantially greater because of past injury).

To register Grelson retroactively, the employers and insurers would have to notify the Commissioner of Labor and Industry of Grelson's condition "within 180 days after notice of the employee's personal injury is received by the employer. Registration subsequent to the injury shall be based on a medical report made prior to the injury indicating the pre-existing physical impairment." Minn.Stat. § 176.131, subd. 3(b) (1980). The 180-day time limit was met. The issues in this case revolve around whether the medical reports indicated a sufficient pre-existing impairment to require retroactive registration.

Physical impairment under the statute effective at the time was defined as:

[A]ny physical or mental condition that is permanent in nature, whether congenital or due to injury, disease or surgery and which is or is likely to be a hindrance or obstacle to obtaining employment provided that, physical impairment as used herein is limited to the following:

\* \* \* \* \* \*

(*o*) Any other physical impairment for which at least 50 weeks or more of weekly benefits would be payable as permanent partial disability if the physical impairment were evaluated according to standards used in workers' compensation proceedings \* \* \*.

Minn.Stat. § 176.131, subd. 8 (1980). The workers' compensation laws equate the loss of an arm with 270 weeks of disability. Minn.Stat. § 176.101, subd. 3(14) (1980). Thus, a permanent partial disability rating of 18.5% would be needed to equal the 50-week disability required for registration. Minn.Stat. § 176.131, subd. 8(*o*) (1980). The employers and insurers had the burden of showing that an 18.5% or greater permanent partial disability existed before the last injury.

The employers and insurers claim that if Dr. Titrud's report, the only report available after the third injury, but before the fourth injury, is not accepted, registration would be dependent on later doctors' reports. This, they feel, would be contrary to the provision in the statute that registration shall be "in effect as long as the impairment exists." Minn.Stat. § 176.131, subd. 5(b) (1980). This argument seems predicated on the belief that had Dr. Titrud's report been sent to the special fund immediately after the third injury, Grelson would have been registered without question. The issue before this court is not, however, whether Grelson should have been registered following the third injury, but whether, after the fourth injury, sufficient evidence of a pre-existing injury was presented to mandate retroactive registration. The question becomes whether the fund could examine the medical reports made after the fourth injury which indicated that Grelson's impairment after the third injury was substantially less than Dr. Titrud had estimated it.

The employers and insurers claim the later reports cannot be used because healing, surgery, or some miracle might have lowered Grelson's permanent partial disability between the third and fourth injuries. Since the employers and insurers have the burden of showing the pre-existing injury, it would be incumbent upon them to come forward with evidence showing the decrease in disability. In this case, all the physicians, except Dr. Boxall, examined Grelson before his surgery. Grelson testified that his surgery had little effect on his condition. The compensation judge found that "[t]he medical testimony in this

case does not support the theory that the injury sustained by the employee in this case ever decreased in its severity at any time." It cannot be claimed, then, that the difference between Dr. Titrud's estimate and the estimates of the other doctors was the result of the surgery or some healing process.

 There is no specific mechanism built into the statute to allow the fund to challenge an attempted registration. Since registration is allowed only for specific types and qualities of impairments, Minn. Stat. § 176.131, subd. 8 (1980), since "satisfactory evidence of such physical impairment" is required, Minn.Stat. § 176.131, subd. 5(a) (1980), and sin.: the burden of proving the impairment is on, the registrant, a registerable injury in fact is required by statute. The fund need not accept an application for registration when it doubts the statutory requirements have actually been met. A hearing is thus held before a compensation judge to determine whether the physical impairment actually meets the statutory standards. All relevant evidence on that issue, including the later medical reports, may be evaluated to determine if a registerable injury in fact existed.

When it received this application for registration, the fund was presented with several medical opinions which placed the percentage of disability slightly above or below the requirements for registration and one which placed the disability much higher than the others. Although the fund registered the employee for any future injuries, it denied retroactive registration. Thus, the hearing was held.

Dr. Titrud's report was one piece of evidence among many. It was the only doctor's report that could support a prior injury because it was the only report in the record prior to the fourth injury. The compensation judge's finding that Dr. Titrud's 25% rating should be accepted for registration purposes is factually at odds with his

specific finding that the prior impairment was, in fact, only 14%. The Workers' Compensation Court of Appeals, noting the inconsistency, was correct in affirming the judge's finding of a 14% prior impairment and holding it insufficient to support a retroactive registration. The Workers' Compensation Court of Appeals is affirmed.